IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

E.D.,                                        :
                                             :
                    Plaintiff,               :        CIVIL ACTION NO. 16-2750
                                             :
         v.                                  :
                                             :
DANIEL SHARKEY, BERKS COUNTY                 :
RESIDENTIAL CENTER-IMMIGRATION               :
FAMILY CENTER (BCRC-IFC),                    :
COUNTY OF BERKS, PENNSYLVANIA,               :
THOMAS DECKER, ICE Field Office              :
Director, DIANE EDWARDS, Director of         :
BCRC-IFC, JEREMIAH / JOSH PETREY,            :
ICE Employee, JOHN BEHM, JAMIE               :
HIMMELBERGER, BRITTANY                       :
ROTHERMEL, ERIKA TAYLOR, and                 :
MATTHEW MALINOWSKI,                          :
                                             :
                    Defendants.              :

## MEMORANDUM OPINION

Smith, J.                                                           May 16, 2017

The Due Process Clause of the Fifth Amendment provides immigration detainees with the right to be free from physical attack, including sexual assault. The plaintiff has brought allegations of institutional sexual assault by a staff member while she was detained at a county immigration family center. The plaintiff has sued the assaulting staff member, the immigration family center, the county, various county employees, and two federal immigration officers. She contends, *inter alia*, that the employees at the county immigration family center knew of the alleged sexual assaults but failed to protect her. The two federal immigration officers, an "employee" and a regional field office director, have moved to dismiss the claims against them, asserting, *inter alia*, that the plaintiff has failed to state a claim upon which relief can be granted against them and that they are entitled to qualified immunity from suit.

The court has reviewed the second amended complaint and the parties' submissions, and will grant both motions to dismiss. As to the regional field office director, against whom the plaintiff has asserted claims of failure to protect, failure to implement policies and practices, and retaliation, the court will grant the motion to dismiss on qualified immunity grounds and because a retaliation claim in this context is not cognizable. Accordingly, the court will dismiss those claims with prejudice. As to the other federal defendant, against whom the plaintiff has asserted a failure to protect claim, the court will grant the motion to dismiss for failure to state a claim upon which relief can be granted, but without prejudice.

## I.      ALLEGATIONS AND PROCEDURAL HISTORY

Beginning in May 2014, the plaintiff, E.D., was a female immigration detainee at the Berks County Residential Center-Immigration Family Center ("BCRC-IFC"). BCRC-IFC is operated by Berks County, pursuant to a contract with United States Immigration and Customs Enforcement ("ICE") to hold immigration detainees at the BCRC-IFC. *See* Second Am. Compl. at ¶¶ 5, 19. Thus, E.D. was detained by ICE, a federal agency, but was housed in a county facility run by county employees. The BCRC-IFC housed approximately ninety women and children. *Id.* at ¶ 25.

The defendants in this action are: Daniel Sharkey ("Sharkey"), a former Berks County employee at the BCRC-IFC, *id.* at ¶ 7; Thomas Decker ("Decker"), the ICE Field Office Director for the region that includes the BCRC-IFC, *id.* at ¶ 8; Diane Edwards ("Edwards"), the Director of the BCRC-IFC, *id.* at ¶ 9; Jeremiah Petrey ("Petrey"), an ICE employee working at the BCRC-IFC, *id.* at ¶ 10; and John Behm, Jamie Himmelberger, Erika Taylor, Matthew Malinowski, and Brittany Rothermel, current Berks County employees at the BCRC-IFC. *Id.* at ¶¶ 11-15.

E.D. filed a second amended complaint, the operative complaint at this stage in the proceedings, on October 21, 2016, in which she alleges that she sought to escape domestic violence and sexual assault by entering the United States in or around May 2014. *Id.* at ¶ 16. Upon her entry, E.D. was detained in an immigration facility in Texas for approximately one week until she was transferred to the BCRC-IFC, which is located in Leesport, Pennsylvania. *Id.* at ¶¶ 17, 18.

Upon her detention at the BCRC-IFC, E.D. was placed in a room with three adults and three children. *Id.* at ¶ 21. There was a staff area in the center of the room, and the residents' rooms were located on the sides of the staff area. *Id.* at ¶ 24. Although there were surveillance cameras in the common areas and recreation yard, there were no cameras in the sleeping areas. *Id.* at ¶ 23. Despite the lack of cameras in the sleeping areas, security personnel conducted three "counts" during the day and made rounds every ten to fifteen minutes at night. *Id.* at ¶ 22.

Shortly after E.D.'s arrival at the BCRC-IFC, she met Sharkey. *Id.* at ¶ 26. After approximately a month, Sharkey attempted to befriend E.D. by giving her and her son treats, such as chocolate and extra food. *Id.* at ¶ 27. Sharkey continued to groom E.D. by continuing to bestow favors upon her, including allowing her to use his cell phone to call her mother and take pictures, and giving her and her son toys and clothes. *Id.* at ¶ 28. Sharkey even promised to assist E.D. with her immigration issues by helping her get released from the BCRC-IFC. *Id.* at ¶ 29. Other residents and facility staff, including Petrey, John Behm, Jamie Himmelberger, Erika Taylor, Matthew Malinowski, and Brittany Rothermel, "noticed the attention [E.D.] was receiving." *Id.* at ¶ 30.

Sharkey then began touching and kissing E.D. on various occasions. *Id.* at ¶¶ 31, 32. Although E.D. did not want Sharkey to touch her, she feared that he would retaliate against her if

she protested. *Id.* at ¶ 33. She refused to touch him, which angered him and led to Sharkey insulting her. *Id.* at ¶ 34. Sharkey also told E.D. that if she told anyone about their relationship, she would be deported back to Honduras. *Id.* at ¶ 41.

Starting in July 2014, Sharkey began forcing E.D. to engage in sexual intercourse. *Id.* at ¶¶ 35, 36. On one occasion when they were having intercourse in a bathroom, a seven-year-old girl walked in on them and reported what she saw to her mother. *Id.* at ¶ 37. On another occasion in August 2014, E.D. and Sharkey were having intercourse in another resident's room. The resident returned to the room, but it appears that E.D. was able to convince the resident to leave the room and the resident did not observe any sexual activity. *Id.* at ¶¶ 38, 39.

By August 2014, BCRC-IFC staff members, including Petrey, John Behm, Jamie Himmelberger, Erika Taylor, Matthew Malinowski, and Brittany Rothermel, "were aware of [Sharkey and E.D.'s] intimate relationship but failed to take any steps to protect [E.D.]" *Id.* at ¶ 43. In addition, several witnesses to E.D. and Sharkey's intimacy complained to the staff about the relationship. *Id.* at ¶ 44.

After an incident in August 2014 where Sharkey unsuccessfully attempted to pull down E.D.'s pants because she refused to submit, Sharkey's employment at the BCRC-IFC ended. *Id.* at ¶¶ 40, 45. Prompted by the residents' complaints, BCRC-IFC staff started investigating E.D. and Sharkey's relationship. *Id.* at ¶ 46. They interviewed E.D., who denied the sexual assaults because she feared deportation. *Id.* Neither BCRC-IFC staff nor ICE officers informed E.D. that she had not broken any state or federal laws, that she was a victim under state and federal laws, or that Sharkey would be considered an abuser. *Id.* at ¶ 47.

E.D. continued to conceal her relationship with Sharkey until she eventually informed her immigration attorney and the attorney's assistant in the fall of 2014. *Id.* at ¶ 48. The attorney

and his assistant contacted various ICE employees and offices, including Decker's Field Office, and informed them of the incidents. *Id.* at ¶ 49. They also informed Edwards and the BCRC-IFC. *Id.* at ¶ 50. At this point, ICE officials took E.D. to the Berks County District Attorney's office where a detective and an ICE special agent interviewed her. *Id.* at ¶ 51. E.D. informed her interviewers about her relationship with Sharkey. *Id.*

After E.D. reported the incidents with Sharkey through her attorney, the defendants "began denying [her] and her son privileges, such as denying a request for a haircut for [her] son, even though other children were permitted haircuts." *Id.* at ¶ 56. In approximately November 2014, Edwards directed the BCRC-IFC and staff to take "many of the women's and girls' clothing, place[] them in garbage bags, and g[i]ve the residents other clothing that they claimed were more appropriate." *Id.* at ¶ 57. In addition, Edwards and the BCRC-IFC began prohibiting women residents from wearing any skirts, dresses, tight clothing, or clothing that revealed any cleavage. *Id.* at ¶ 58. The other BCRC-IFC residents blamed E.D. for the change in clothing policy and isolated her. *Id.* at ¶ 59.

Due "in large part to the above-related incidents," E.D. formally requested immediate parole in October and December 2014. *Id.* at ¶¶ 60, 61. On both occasions, Decker denied her parole. *Id.* at ¶¶ 60, 61. Nonetheless, E.D. was eventually released from the BCRC-IFC on an order of supervision and she moved to Georgia. *Id.* at ¶ 62. Sharkey was later arrested and convicted of institutional sexual assault for his conduct with E.D. *Id.* at ¶ 63.

Two of the defendants—Petrey and Decker, both federal ICE employees—filed motions to dismiss the second amended complaint. Doc. Nos. 36, 44. The remaining defendants, the BCRC-IFC, County of Berks, Edwards, John Behm, Jamie Himmelberger, Matthew Malinowski,

Brittany Rothermel, and Erika Taylor filed an answer with affirmative defenses to the second amended complaint. Doc. No. 37.

## II. DISCUSSION

### A. Standard of Review for Rule 12(b)(6) Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted). Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In implementing the overarching plausibility standard, the court is required to conduct a three-part inquiry. First, the court must "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian*, 696 F.3d at 365 (citations omitted). Second, the court must identify allegations that are not "entitled to the assumption of truth" because they "are no more than conclusions." *Id.* (citations omitted). Thus, legal conclusions, whether in pure form or "couched as factual allegation[s]," and conclusory factual allegations are not entitled to be assumed true. *See Iqbal*, 556 U.S. at 678, 681 (quoting *Twombly*, 550 U.S. at 555); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012). Finally, the court must "look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian*, 696 F.3d at 365 (quotations omitted). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

The court generally limits this three-part inquiry to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). However, the court may also properly consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* (citations omitted).

## B.     Petrey's Motion to Dismiss

The Second Amended Complaint contains two individual capacity claims against Petrey, an ICE employee who worked at the BCRC-IFC during E.D.'s detention there. Count II is a constitutional failure to protect claim against all defendants, including Petrey, alleging that each defendant failed to protect E.D. from sexual abuse and assault in violation of her rights under the

Fourteenth Amendment. Second Am. Compl. at ¶¶ 73-75. Petrey argues, and E.D. does not contest, that because Petrey is a federal employee, the failure to protect claim against him must be analyzed as a *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) claim pursuant to the Due Process Clause of the Fifth Amendment.[1] Brief in Supp. of Def. Jeremiah Petrey's Mot. to Dismiss Pl.'s Second Am. Compl. ("Petrey's Br. in Supp.") at 6-7, Doc. No. 36-2. Count V alleges unconstitutional retaliation against all defendants, Second Am. Compl. at ¶¶ 78-80, but E.D. has stipulated to dismissing that claim against Petrey. Pl.'s Resp. to Def. Petrey's Mot. to Dismiss Pl.'s Second Am. Compl. ("Pl.'s Resp. to Petrey's Mot.") at 1 n.1, Doc. No. 38. Thus, the only remaining claim against Petrey is Count II—the failure to protect claim.

Petrey contends that the court must dismiss the failure to protect claim because (1) E.D. has failed to allege that he acted with subjective deliberate indifference to her health or safety, and (2) he is entitled to qualified immunity. Petrey's Br. in Supp. at 7-11, 14-16. In response to these arguments, E.D. contends that (1) under *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), a plaintiff alleging failure to protect need not allege subjective deliberate indifference, (2) even if deliberate indifference were required to state a failure to protect claim, she has sufficiently plead that Petrey was aware of the serious risk of harm to her and was deliberately indifferent to her safety, and (3) Petrey is not entitled to qualified immunity. Pl.'s Resp. to Petrey's Mot. at 5-9, 11-13.

---

[1] 42 U.S.C. § 1983 only provides a right of action against state actors, and a *Bivens* action "is the federal equivalent of the § 1983 cause of action against state actors." *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). Further, the due process clause of the Fourteenth Amendment is only applicable to the states. Analyzing due process violations under the Fifth Amendment, however, is analogous to that under the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520 (1979) (applying the Fifth Amendment due process clause to federal pre-trial detainees).

1.    <u>Sufficiency of the Failure to Protect Claim</u>

The Third Circuit has recognized the right to be free from physical attack and injury as a liberty interest protected by the Due Process Clause, and, accordingly, has recognized the viability of failure to protect claims brought by prisoners. *See Davidson v. O'Lone*, 752 F.2d 817, 821-22 (3d Cir. 1984), *aff'd sub nom. Davidson v. Cannon*, 474 U.S. 344 (1986). While E.D. was an immigration detainee at the time of the alleged constitutional violations, rather than a prisoner, immigration detainees are entitled to the same constitutional protections as pretrial detainees. *Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011) (per curiam). "[A] pretrial detainee presenting a failure-to-protect claim must plead that the prison official acted with deliberate indifference to the detainee's health or safety." *Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (per curiam). "Deliberate indifference" is a subjective standard in that "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). Thus, a plaintiff must show that the defendant was subjectively aware of the risk of harm to the plaintiff's health or safety, and disregarded it. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

E.D. contends that the Supreme Court's opinion in *Kingsley v. Hendrickson,* 135 S. Ct. 2466 (2015), eliminated the subjective deliberate indifference requirement for pretrial detainees' failure to protect claims, and that she need only establish an objective risk of serious harm that could have been eliminated through reasonable and available measures. Pl.'s Resp. to Petrey's Mot. at 6-7 (citing *Castro v. City of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). *Kingsley* was an excessive force case in which a pretrial detainee brought a due process claim

under 42 U.S.C. § 1983. As the court explained, excessive force claims involve two distinct state-of-mind questions:

> The first concerns the defendant's state of mind with respect to his physical acts—i.e., his state of mind with respect to the bringing about of certain physical consequences in the world. The second question concerns the defendant's state of mind with respect to whether his use of force was "excessive."

*Kingsley*, 135 S. Ct. at 2472. As to the second state-of-mind question, the court held that a pretrial detainee need only prove that the defendant used objectively unreasonable force, and thus that the detainee need not show that the defendant subjectively knew the force was unreasonable. *Id.* at 2473. As to the first state-of-mind question, however, the court stated that there was "no dispute" that the plaintiff must still show that the defendant *purposely or knowingly* used objectively unreasonable force. *Id.* at 2472. Thus, a plaintiff need not show that the defendant subjectively *interpreted* the force as excessive, but still must show that the defendant deliberately *used* the force.[2] Therefore, *Kingsley* does not abrogate the requirement

---

[2] In a failure-to-protect case, only the first state-of-mind inquiry seems to be relevant. E.D. cites a Ninth Circuit Court of Appeals case that held that *Kingsley* could apply to failure to protect claims. *Castro v. City of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). That case, however, also recognized the two separate state-of-mind issues in excessive force claims:

> Because of the differences between failure-to-protect claims and claims of excessive force, though, applying *Kingsley*'s holding to failure-to-protect claims requires further analysis. As explained above, *Kingsley* recognized that there are two state-of-mind issues at play in an excessive force claim. The first—the officer's state of mind with respect to his physical acts—was undisputedly an intentional one there, because the officer had taken the affirmative act of using force knowingly and purposefully. In the failure-to-protect context, in which the issue is usually inaction rather than action, the equivalent is that the officer's conduct with respect to the plaintiff was intentional. . . . Under *Kingsley*, the second question in the failure-to-protect context would then be purely objective: Was there a substantial risk of serious harm to the plaintiff that could have been eliminated through reasonable and available measures that the officer did not take, thus causing the injury that the plaintiff suffered? That inquiry differs from the inquiry with respect to an Eighth Amendment failure-to-protect claim: There, the deprivation alleged must objectively be sufficiently serious; and the prison official must subjectively have a sufficiently culpable state of mind.

*Castro*, 833 F.3d at 1070-71. Again, the pertinent state-of-mind issue in this case is the first issue, which neither *Kingsley* nor *Castro* holds must be analyzed objectively. The parties do not dispute that the threat of harm Sharkey posed to E.D. was objectively serious; rather, the parties dispute whether Petrey was subjectively aware of the threat and acted with deliberate indifference towards that threat.

that E.D. show that Petrey subjectively knew of the danger to her safety, and was deliberately indifferent to that danger.[3]

Accordingly, E.D.'s second amended complaint must contain allegations sufficient to raise a reasonable inference of deliberate indifference. The second amended complaint contains the following allegations with respect to Petrey's conduct and state-of-mind:

- "Other residents and facility staff, including [Petrey] . . . noticed the attention [E.D.] was receiving." ¶ 30.

- "By August 2014, several staff members including . . . Petrey were aware of [E.D. and Sharkey's] intimate relationship but failed to take any steps to protect Plaintiff." ¶ 43.

The pertinent issue as to these allegations, which on their face state that Petrey was subjectively aware of the risk of harm Sharkey posed to E.D., is whether they are entitled to a presumption of truth under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Petrey contends that these allegations are conclusory and not entitled to a presumption of truth because they contain no facts suggesting how Petrey "noticed the attention" or became "aware" of the relationship between E.D. and Sharkey. Petrey's Br. in Supp. at 9-10. E.D. contends that the allegations are not boilerplate legal conclusions because they address Petrey's factual state of mind, and that detailed factual allegations are not required at this stage of the proceedings. Pl.'s Resp. to Petrey's Mot. at 9.

While E.D. is correct in that detailed factual allegations are not required at the pleading stage, the second amended complaint must still contain "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Case law in this circuit suggests that merely alleging that a defendant knew of a risk to the plaintiff is insufficient to support an inference of deliberate indifference absent any factual allegations supporting that conclusion, and

---

[3] E.D. concedes that her claims against Petrey are not brought under a theory of supervisory liability. Pl.'s Resp. to Petrey's Mot. at 8 n.5.

thus cannot alone establish facial plausibility. *Compare, e.g., Bistrian v. Levi*, 696 F.3d 352, 369 (3d Cir. 2012) (holding that prisoner plausibly alleged failure to protect claim where he alleged that he repeatedly advised officials of threats), *and Bucano v. Austin*, C.A. No. 15-67 Erie, 2016 WL 944473, at *4 (W.D. Pa. Mar. 14, 2016) (denying motion to dismiss where the plaintiff alleged that at least one other female inmate had alleged sexual misconduct), *with, e.g., Talbert v. Giorla*, No. CIV. A. 15-3229, 2016 WL 8716274, at *7 (E.D. Pa. Apr. 15, 2016) ("Despite claims that [the defendants] knew of his alleged injuries, [the plaintiff] does not provide any factual support establishing their actual knowledge."), *and Coleman v. Wetzel*, No. 1:15-CV-847, 2015 WL 10381754, at *6 (M.D. Pa. Dec. 28, 2015), *R. & R. adopted*, 2016 WL 775063 (M.D. Pa. Feb. 29, 2016) ("Plaintiff's conclusory allegation that 'Defendants . . . knew of this substantial risk of serious harm and were deliberately indifferent to that risk' is insufficient to support a finding of deliberate indifference."), *and Buoniconti v. City of Phila.*, 148 F. Supp. 3d 425, 435 (E.D. Pa. 2015) (holding that the plaintiff's allegations that the defendants "knew or should have known of Plaintiff's injury" were merely "naked assertions devoid of further factual enhancement" and "[t]hreadbare recitals of the elements of a cause of action" that necessitated dismissal (citation omitted)), *and Knight v. Wapinsky*, No. 3:12-CV-2023, 2013 WL 786339, at *7 (M.D. Pa. Mar. 1, 2013) (holding that allegations as to one defendant were insufficient where complaint alleged that all defendants were "well aware" of the plaintiff's circumstances, but did not allege how and when that defendant was advised of the circumstances).

In this case, the second amended complaint is completely devoid of factual allegations that Petrey ever observed any interaction between E.D. and Sharkey, that anyone ever told him about the relationship, or that he was aware of other similar complaints against Sharkey or any other Berks County employee. Nor does the second amended complaint allege that Petrey ever

interacted with the detainees or the Berks County employees—he is an ICE employee, and the complaint does not specify his role at the BCRC-IFC. *See* Second Am. Compl. at ¶ 10. Thus, E.D.'s conclusory statements that Petrey noticed the attention Sharkey directed towards her and knew about their intimate relationship are not entitled to a presumption of truth. Accordingly, E.D. has failed to state a claim for failure to protect against Petrey because the allegations in the second amended complaint do not state a plausible claim of deliberate indifference.[4] The court will dismiss Count II against Petrey without prejudice.

### 2.    Qualified Immunity

While E.D.'s failure to protect claim against Petrey fails to state a claim upon which relief can be granted, the court will allow her to replead that claim and thus must address whether Petrey is entitled to qualified immunity from liability at this early stage in the proceedings. Petrey is entitled to qualified immunity unless the facts alleged show that his conduct violated a constitutional or statutory right that was clearly established at the time of the violation. *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008). Therefore, the court must determine whether: (1) the facts alleged, taken in the light most favorable to E.D., show that Petrey's conduct violated a

---

[4] Petrey also argues that the deliberate indifference standard does not apply to his conduct because he had no custodial responsibilities over the BCRC-IFC detainees as an ICE officer. Rather, he contends that the state-created danger doctrine of *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) is the applicable analysis. The Supreme Court held in *DeShaney* that § 1983 liability can be established when the state affirmatively puts a person in danger; that is, when a "state-created danger" causes a plaintiff harm. Because *Bivens* claims are the federal counterpart of § 1983 claims, district courts have applied the state-created danger doctrine to such claims. *See Sadeghi v. Conforti*, No. CIV. A. 00-1947, 2001 WL 34355650, at *2 (E.D. Pa. Oct. 31, 2001) ("Plaintiff therefore has brought this [*Bivens*] action under the 'state-created danger theory' which was adopted by out [sic] Court of Appeals as a 'viable mechanism for establishing a constitutional claim' under § 1983." (quoting *Kneipp v. Tedder*, 94 F.3d 1199 (3d Cir. 1996)); *Wright v. Evans*, Civ. No. 07-3725 (JBS), 2009 WL 799946, at *9 (D.N.J. Mar. 24, 2009) ("[T]he 'state created danger' analysis will apply equally to a *Bivens* claim."), *aff'd sub nom. Wright v. Drug Enf't Agency*, 354 F. App'x 608 (3d Cir. 2009) (per curiam). To state a viable state-created danger claim, a plaintiff must show, *inter alia*, that "a state actor acted with a degree of culpability that shocks the conscience." *Walter v. Pike Cty., Pa.*, 544 F.3d 182, 192 (3d Cir. 2008). If the second amended complaint fails to allege subjective deliberate indifference, it certainly fails to allege "a degree of culpability that shocks the conscience." Thus, even if the state-created danger doctrine were the applicable test, the second amended complaint fails to state a claim under that theory for the same reason that it fails to state a claim under the deliberate indifference theory.

constitutional right, and (2) the constitutional right Petrey violated was a clearly established right of which a reasonable officer would be aware. *See Saucier v. Katz*, 533 U.S. 194, 194-95 (2001).

The court has concluded that E.D. has failed to allege a plausible constitutional violation against Petrey; accordingly, Petrey is entitled to qualified immunity at the first step of the analysis because E.D. has failed to show that his conduct violated her constitutional rights. E.D., however, may be able to establish a constitutional violation in a third amended complaint. Thus, the court must proceed to the second step of the qualified immunity analysis and determine whether the constitutional right violated was clearly established at the time of the alleged violation. *See Conte v. Rios*, 658 F. App'x 639, 642–43 (3d Cir. 2016) (holding that the district court erred by "deferring a decision on the qualified immunity issue . . . without determining whether [the plaintiff's] Fourteenth Amendment right was clearly established at the time of the conduct at issue"). The answer to that inquiry depends on how broadly or narrowly the court characterizes the constitutional right at hand. Petrey contends that the relevant right in this case is an immigration detainee's right to have a federal immigration official with no custodial responsibilities over the health and safety of detainees protect detainees from institutional sexual assault by state employees. Petrey's Br. in Supp. at 15. E.D. contends that the right at hand need not be characterized so specifically, and that the right violated in this case was the more general right of immigration detainees to be free of sexual assault. Pl.'s Resp. to Petrey's Mot. at 11.

In determining whether a right was clearly established at the time of the allegedly unconstitutional conduct,

> one must look to case law to see whether "the right the official is alleged to have violated [has] been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

*Hope v. Pelzer*, 536 U.S. 730, 753 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, "it is crucial to look at precedent applying the relevant legal rule in similar factual circumstances." *Id.*; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). However, "[c]ertain actions so obviously run afoul of the law that an assertion of qualified immunity may be overcome even though court decisions have yet to address 'materially similar' conduct." *Hope*, 536 U.S. at 753; *see also People of Three Mile Island Through Three Mile Island Alert, Inc. v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 144 (3d Cir. 1984) (adopting an approach "requiring some but not precise factual correspondence and demanding that officials apply general, well developed legal principles"). The court must first look to applicable Supreme Court precedent, and if there is none, "it may be possible that a robust consensus of cases of persuasive authority in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity." *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (citations and internal quotation marks omitted).

As a preliminary matter, Petrey's characterization of the right at hand is exceedingly narrow, and E.D.'s characterization of the right at hand is exceedingly general. At this stage in the proceedings, however, it is impossible to accurately define the relevant constitutional right allegedly violated because the court has no information about Petrey's role at the BCRC-IFC. The second amended complaint merely states that Petrey "is an employee of ICE at the BCRC-IFC facility," and does not specify whether Petrey had custodial responsibilities over the detainees. Second Am. Compl. at ¶ 10. The second amended complaint also alleges that Berks County, not ICE, owned and operated the BCRC-IFC, and the court thus cannot infer that Petrey was responsible for detainee health and safety in any way. *Id.* at ¶¶ 5, 19. But nor can the court

infer that Petrey did *not* have any custodial responsibilities over the detainees. E.D. alleges that she was an ICE detainee, not a Berks County detainee; accordingly, ICE detained E.D., ICE placed her in the BCRC-IFC, and only ICE had the authority to release her from custody. *See id.* at ¶¶ 17, 19, 59-61. Further, Petrey worked at the BCRC-IFC facility, rather than at an ICE field office, *id.* at ¶ 10, and the ICE/DRO[5] Residential Standards include guidelines for sexual abuse and assault prevention and intervention providing that Berks County employees must report sexual assault to "the highest ranking on-site ICE/DRO representative." *See* ICE/DRO Residential Standard at 6, Exhibit A to Thomas Decker's Mot. to Dismiss, Doc. No. 44-3.[6] This suggests that Petrey, an on-site ICE employee, may have been involved in addressing alleged incidents of sexual assault.

The manner in which the court must define the right at hand for purposes of qualified immunity thus turns on an issue of fact: Petrey's role at the BCRC-IFC. If Petrey's role at the BCRC-IFC was purely administrative, requiring no supervision of or involvement with Berks County employees or detainees, then the most accurate way to define the right at hand would be: the right to have a non-custodial and non-supervisory government officer protect an immigration detainee from sexual assault of which he is aware. The court is aware of no Supreme Court precedent clearly establishing that right, and Petrey would be entitled to qualified immunity under those circumstances. On the other hand, if Petrey's role at the BCRC-IFC involved, for example, receiving reports of assault from the Berks County employees, supervision of the Berks County employees to ensure their compliance with the ICE contract, or overseeing the ICE

---

[5] DRO is an acronym for the Office of Detention and Removal Operations, a division of ICE.

[6] "In evaluating a motion to dismiss, [the court] may consider . . . 'matters incorporated by reference or integral to the claim . . . .'" *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). E.D. explicitly mentions the ICE/DRO Residential Standards on sexual abuse and assault prevention and intervention in the second amended complaint, incorporating the Standards by reference into the pleadings. Second Am. Compl. at ¶ 64. Thus, the court may consider the Residential Standards in ruling on the motions to dismiss.

detainees in any way, the more accurate way to characterize the right at hand would be: the right to have a custodial government officer protect an immigration detainee from sexual assault of which he is aware. That right is clearly established, and Petrey would not be entitled to qualified immunity under those circumstances, assuming that E.D. is able to state a plausible claim of a constitutional violation in a third amended complaint. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001). Accordingly, at this time, an issue of fact remains that precludes the court from holding that Petrey is entitled to qualified immunity as a matter of law from E.D.'s failure to protect claim. Petrey, however, is not precluded from raising his qualified immunity defense in response to a third amended complaint or in a motion for summary judgment.

### C.     Decker's Motion to Dismiss

The Second Amended Complaint contains three individual capacity claims against Thomas Decker, the former Philadelphia-area ICE Field Office Director. Count II is a constitutional failure to protect claim, alleging that each defendant failed to protect E.D. from sexual abuse and assault in violation of her rights under the Fourteenth Amendment.[7] Second Am. Compl. at ¶¶ 73-75. Count III alleges that Decker, along with other Berks County employees, failed to establish and/or implement policies and procedures that would prevent and deter sexual abuse and assault. *Id.* at ¶¶ 76-77. Finally, Count V alleges that the defendants, including Decker, retaliated against E.D. for reporting her sexual assault in violation of the First Amendment; specifically, E.D. alleges that Decker denied E.D.'s parole request out of retaliation, rather than on its merits. *Id.* at ¶¶ 78-80.

---

[7] As discussed *supra*, this claim must be analyzed as a *Bivens* claim pursuant to the due process clause of the Fifth Amendment because Decker is a federal actor.

1.    Failure to Protect Claim

In Count II, E.D. alleges that each defendant unconstitutionally failed to protect her from sexual assault.  Second Am. Compl. at ¶¶ 73-75.  In his motion to dismiss, Decker contends that (1) the second amended complaint fails to allege that he was subjectively aware of a risk of harm to E.D., (2) E.D. cannot alternatively hold him liable for the failure to protect her from sexual assault under a theory of supervisor liability, and (3) he is entitled to qualified immunity.  Brief in Supp. of Def. Thomas Decker's Mot. to Dismiss Pl.'s Second Am. Compl. ("Decker's Br. in Supp.") at 13-16, 21-23, Doc. No. 44-2.  E.D. contends that (1) the second amended complaint sufficiently alleges that Decker is liable under a theory of supervisory liability, and (2) Decker is not entitled to qualified immunity.  Pl.'s Resp. to Def. Decker's Mot. to Dismiss Pl.'s Second Am. Compl. ("Pl.'s Resp. to Decker's Mot.") at 7-12, 15-18, Doc. No. 53.

Again, "a pretrial detainee presenting a failure-to-protect claim must plead that the prison official acted with deliberate indifference to the detainee's health or safety." *Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (per curiam).  In this case, E.D. does not allege that Decker knew of the sexual assault—she does not allege that he worked at the BCRC-IFC, and states that he is the ICE "Field Director of the region that includes the BCRC-IFC facility." Second Am. Compl. at ¶ 8.  Instead, she contends that Decker is liable in his capacity as a supervisor of the BCRC-IFC.

In *Bivens* actions, supervisors cannot be held liable solely for the unconstitutional conduct of an employee. *Dinote v. Danberg*, 601 F. App'x 127, 131 (3d Cir. 2015).  Supervisory liability is available only if the supervisor "(1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm, or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as

18

the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* (internal quotation marks and citation omitted).

E.D. raises a policy, practice, or custom argument in Count III, the merits of which are addressed *infra*. Count II is a failure to protect claim, and a supervisory claim against Decker is viable under that theory only if E.D. has alleged that he violated her rights, directed others to violate them, or had knowledge of and acquiesced in the subordinate's unconstitutional conduct. The second amended complaint contains no such allegations, and does not even allege in a conclusory fashion that Decker knew about her relationship with Sharkey. In fact, Decker is not mentioned in the factual allegations of the second amended complaint until paragraph 49, which says that after E.D. finally told her immigration attorney of the sexual assault (which she had concealed up until that point), her attorney informed Decker's office of the incidents.[8] Second Am. Compl. at ¶ 49. E.D.'s failure to protect allegations all pertain to the time period *prior* to her revealing the sexual assault to her immigration attorney—after she told her attorney about the incidents, ICE launched an investigation. Second Am. Compl. at ¶ 51.

For the aforementioned reasons, the failure to protect claim in Count II is insufficient to state a constitutional violation against Decker. Thus, Decker is entitled to qualified immunity from liability because E.D. has failed to state a violation of her constitutional rights. Moreover, because the second amended complaint does not even contain conclusory allegations as to Decker's subjective awareness of the relationship between E.D. and Sharkey, allowing E.D. to replead this claim would be futile and the court will dismiss the claim with prejudice.

---

[8] The second amended complaint *does* allege that after E.D.'s attorney notified Decker's office of the incidents, Decker "failed to ensure that E.D. was placed in a supportive environment with the least restrictive housing option available." Second Am. Comp. at ¶ 55. Based on the allegations in the second amended complaint, however, all of the incidents of sexual assault occurred *prior* to E.D.'s attorney contacting Decker's office. Thus, this allegation cannot form the basis of a claim of deliberate indifference against Decker due to a lack of causation.

## 2.    Policies & Procedures Claim

E.D.'s second claim of supervisory liability against Decker is for failing to establish and implement adequate policies, procedures, and practices that would protect immigration detainees from sexual abuse and assault.  Second Am. Compl. at ¶¶ 76-77.  In his motion to dismiss, Decker contends that (1) E.D. has failed to allege that ICE's existing policies were insufficient to protect her from sexual assault, and (2) he is entitled to qualified immunity.  Decker's Br. in Supp. at 14-16, 21-23.  E.D. contends that (1) the second amended complaint sufficiently alleges that Decker failed to establish and/or enforce an effective reporting system and investigative procedures for sexual assault claims, and (2) he is not entitled to qualified immunity.  Pl.'s Resp. to Decker's Mot. at 9-11, 15-18.

To hold Decker liable for such failures, E.D. "must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of . . . injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).  Thus, such a claim still requires subjective deliberate indifference.  *See Wharton v. Danberg*, 854 F.3d 254, 2017 WL1394791, at *6 (3d Cir. Apr. 19, 2017).

Specifically, E.D. alleges that the ICE/DRO Residential Standards require that detention facilities affirmatively act to prevent sexual abuse, and that Decker failed to ensure that the BCRF-IFC properly met these standards and to properly implement existing policies.  Second Am. Compl. at ¶¶ 65-66.  E.D. also alleges that Decker failed to establish and/or implement the following policies and practices: an effective reporting system, information for residents on how to report sexual abuse, notification that any reports would not jeopardize residents' immigration

20

statuses, information about sexual abuse and harassment, and instructions to staff that they are not permitted to have sexual relations with detainees. *Id.* at ¶ 67.

While E.D. has sufficiently identified policies that Decker and the BCRF-IFC arguably failed to employ and that the inadequate or nonexistent policies caused her injury, the second amended complaint contains no allegation about Decker's state of mind—there are no allegations that Decker was aware that the existing ICE policies as implemented at the BCRF-IFC created an unreasonable risk of sexual assault, or that Decker was indifferent to any such risk. *See Beers–Capitol*, 256 F.3d at 136-38 (holding that executive director of state juvenile detention facility could not be held liable for failing to adequately respond to pattern of employee sexual assaults, given failure to show that he was aware of pattern of sexual assaults). E.D. does not allege, for example, that Decker had notice of similar prior incidents of sexual assault at the BCRF-IFC that would indicate that the policies were insufficient and created a risk of harm. *See Heggenmiller v. Edna Mahan Corr. Inst. for Women,* 128 F. App'x 240, 247 (3d Cir. 2005) (concluding that summary judgment was appropriate against supervisor because there was no evidence of "numerous *similar* harms" and the other available evidence "was neither sufficiently similar nor sufficiently serious to support" a supervisory liability claim); *c.f. Climo v. Rustin*, No. CIV. A. 11-1339, 2012 WL 3779178, at *7 (W.D. Pa. Aug. 31, 2012) (finding that allegations in the complaint were sufficient where "it [could] be inferred . . . that previous complaints of sexual and physical assaults certainly placed [the defendant] on notice of a pattern of assaults by his subordinates").

Thus, Count III is insufficient to state a constitutional claim against Decker, entitling Decker to qualified immunity from liability because E.D. has failed to state a violation of her constitutional rights. And again, because the second amended complaint does not even contain

conclusory allegations as to Decker's subjective state of mind, allowing E.D. to replead Count III against Decker would be futile. Accordingly, the court will dismiss the claim with prejudice.

### 3. Retaliation Claim

E.D.'s final claim against Decker alleges that he unconstitutionally denied her parole in retaliation for reporting sexual assault. Second Am. Compl. at ¶¶ 78-80. In his motion to dismiss, Decker contends that (1) the retaliation claim is not a permissible cause of action under *Bivens*, (2) even if *Bivens* provided an implied cause of action for the retaliation, the claim fails because E.D. has failed to set forth allegations supporting the inference that he retaliated against her, and (3) he is entitled to qualified immunity. Decker's Br. in Supp. at 16-23. E.D. contends that (1) the Third Circuit has recognized First Amendment retaliation claims under *Bivens*, (2) the second amended complaint sufficiently pleads a retaliation claim, and (3) Decker is not entitled to qualified immunity. Pl.'s Resp. to Decker's Mot. at 12-14, 18-20.

Deciding whether to recognize a *Bivens* remedy requires that the court consider: (1) "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages;" and (2) "any special factors counselling hesitation before authorizing a new kind of federal litigation." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (citations omitted).

As a special factor weighing against creating a new *Bivens* remedy, Decker points to Congress's decision to enact the Immigration and Nationality Act ("INA"), a comprehensive immigration statutory scheme that, among other things, delineates the types of remedies available to immigrants in removal proceedings. Decker's Br. in Supp. at 17. The INA does not provide for monetary damages for wrongful parole denials, and specifically precludes courts from reviewing discretionary parole determinations. *See* 8 U.S.C. §§ 1182(d)(5)(A),

1252(a)(2)(B). Decker also emphasizes Congress's plenary power over immigration. Decker's Br. in Supp. at 18 n.8. E.D. contends that the Supreme Court has recognized the availability of First Amendment retaliation claims pursuant to *Bivens*. Pl.'s Resp. to Decker's Mot. at 13 (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

The INA does not provide immigration detainees any relief for the unconstitutional denial of discretionary parole, which "does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988). In fact, in *Chappell v. Wallace*, 462 U.S. 296 (1983), the Supreme Court declined to create a *Bivens* action for military personnel who alleged that they had been injured by the unconstitutional actions of their superior officers and who had no statutory remedy against the government itself. The *Chappell* Court emphasized that the "special nature of military life . . . would be undermined by a judicially created remedy exposing officers to personal liability." *Id.* at 304. Creating *Bivens* remedies within the special sphere of immigration, nationality, and citizenship warrants similar hesitation because of Congress's plenary power over the admission of aliens, and the executive branch's sole authority to implement immigration laws. *See, e.g., Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("At the outset, it is important to underscore the limited scope of judicial inquiry into immigration legislation. This Court has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." (internal quotation marks and citation omitted)).

While E.D. has not asked the court to review Decker's decision to deny her parole, she seeks a determination that Decker's reason for denying her parole was retaliatory. Given that the INA precludes courts from reviewing discretionary parole determinations, such an inquiry would

23

be beyond the scope of permissible judicial action. And given that Congress has not provided a right of action for monetary damages in the INA, inserting such a remedy in a field over which Congress has plenary power would also be beyond the scope of permissible judicial action. For similar reasons, courts of appeals in other circuits have declined to find implied *Bivens* remedies in the immigrant detention context. *E.g., Alvarez v. U.S. Immigration & Customs Enf't*, 818 F.3d 1194, 1208 (11th Cir. 2016) (holding that the plaintiff could not "recover damages under *Bivens* for constitutional violations that caused him to endure a prolonged immigration detention" because of the INA's elaborate remedial system, a detained alien's ability to seek a writ of habeas corpus, and Congress's deliberate decision not to provide a private action for damages); *De La Paz v. Coy*, 786 F.3d 367, 377 (5th Cir. 2015) ("Congress's failure to provide an individual damages remedy 'has not been inadvertent.' Since the INA was enacted in 1952, Congress has frequently amended it, demonstrating that the Judiciary should stay its *Bivens* hand." (internal citations omitted)); *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012) (considering, in denying *Bivens* remedy, Congress's failure to include monetary relief for unlawful detention, the intricate and complex remedial scheme of the INA, and the tendency of immigration issues to affect diplomacy, foreign policy, and national security); *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) (declining to extend *Bivens* where doing so "would have the natural tendency to affect diplomacy, foreign policy, and the security of the nation, and that fact counsels hesitation"); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 n.10 (5th Cir. 1999) ("In light of Congress's plenary power over matters concerning immigration, we will not ignore this statutory mandate in an effort to preserve [the plaintiff's] constitutional claims.").

To address E.D.'s argument in favor of creating a *Bivens* remedy, the fact that the Supreme Court has recognized a judicially created *Bivens* remedy for First Amendment

retaliation claims in some contexts does not mean that such a remedy is appropriate in this context. While the Supreme Court recognized a *Bivens* First Amendment retaliation in *Hartman* by holding that a plaintiff may sue a governmental official who prosecutes her in retaliation for constitutionally protected speech, 547 U.S. at 256, the Supreme Court has declined to recognize *Bivens* First Amendment retaliation claims in other contexts. For example, in *Bush v. Lucas*, the court declined to create a *Bivens* remedy for First Amendment retaliation because of "[t]he Government's comprehensive scheme protecting civil servants against arbitrary action by supervisors." 462 U.S. 367, 386 (1983). E.D. has not provided any argument that a *Bivens* remedy is appropriate in this specific context especially given that a *Bivens* remedy "is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances [the Supreme Court has] found a *Bivens* remedy unjustified." *Wilkie*, 551 U.S. at 550. Finally, the fact that the Supreme Court has extended *Bivens* into new contexts in such a small number of cases counsels against creating one here. *See Correctional Servs. Corp. v. Malesko,* 534 U.S. 61, 70 (2001) ("In 30 years of *Bivens* jurisprudence we have extended its holding only twice . . . ."); *Alvarez*, 818 F.3d at 1206 (noting limited number of new *Bivens* remedies). In short, numerous factors weigh against extending a *Bivens* remedy to the facts of this case, and E.D. has presented no factors weighing in favor of doing so. Thus, the court will grant Decker's motion and dismiss Count V against him with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the court will grant the motions to dismiss of Jeremiah Petrey and Thomas Decker. Because E.D. has failed to state a claim upon which relief can be granted, and because the court is unable to determine whether Petrey is entitled to qualified immunity at this time, Count II against Petrey is dismissed without prejudice. Count V against Petrey is

dismissed with prejudice by stipulation. As to Decker, he is entitled to qualified immunity on Counts II and III because E.D. has failed to state a constitutional violation even in a conclusory manner. Further, E.D. lacks a right of action to proceed with Count V against Decker. Thus, all claims against Decker are dismissed with prejudice.

A separate order follows.

BY THE COURT:

_____
EDWARD G. SMITH, J.