IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| E.D.,[1] : | |
|     Plaintiff, : | |
| : | |
| v. : | Civil Action No. 16 Civ. 2750 |
| : | |
| DANIEL SHARKEY; BERKS COUNTY : | Judge Edward G. Smith |
| RESIDENTIAL CENTER-IMMIGRATION : | |
| FAMILY CENTER (BCRC-IFC); COUNTY OF : | |
| BERKS, PENNSYLVANIA; DIANE EDWARDS, : | |
| Director of BCRC-IFC; JEREMIAH / JOSH : | |
| PETREY, ICE Employee; JOHN BEHM; : | |
| JAMIE HIMMELBERGER; : | |
| BRITTANY ROTHERMEL; : | |
| ERIKA TAYLOR; and : | |
| MATTHEW MALINOWSKI, : | |
| : | |
|     Defendants, : | |
| : | |

## THIRD AMENDED COMPLAINT

Plaintiff E.D. was an immigration detainee at the Berks County Residential Center – Immigration Family Center ("BCRC-IFC"), whose constitutional rights guaranteed by the Fourteenth Amendment were violated when she became a victim of institutionalized sexual assault by a Berks County Residential Center staff member, and where federal and county employees were aware of this but failed to protect her. This action arises under the constitution and laws of the United States, specifically the Fourteenth Amendment, First Amendment, Due Process Clause, 42 U.S.C. § 1983, Bivens v. Six Unknown Agents, 403 U.S. 388 (1971), and Pennsylvania state law.

---

[1] Plaintiff's full name is abbreviated to her initials for privacy concerns.

1

## I.    JURISDICTION AND VENUE

1. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff's claims are authorized by 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202.

3. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b).

## II.    PARTIES

4. Plaintiff, E.D., is an adult individual who was a resident at the Berks County Residential Center-Immigration Family Center (BCRC-IFC) at all times relevant to the complaint and is currently residing in Gainesville, Georgia.

5. The BCRC-IFC is owned and operated by the County of Berks in Pennsylvania.

6. The County of Berks is a political subdivision of the Commonwealth of Pennsylvania.

7. Daniel Sharkey was an employee of the BCRC-IFC facility at all times relevant to the complaint.

8. Diane Edwards is the Director of the BCRC-IFC.

9. Jeremiah (or Josh) Petrey[2] is an employee of ICE at the BCRC-IFC facility and is sued in his individual capacity.

10. John Behm is an employee of the BCRC-IFC facility.

11. Jamie Himmelberger is an employee of the BCRC-IFC facility.

12. Erika Taylor is or was an employee of the BCRC-IFC facility.

---

[2] "Josh Petry" was previously named as a Defendant in Plaintiff's Amended Complaint, and it appears he was known as "Josh" at BCRC-IFC, but his correct formal name may be "Jeremiah Petrey."

2

13. Matthew Malinowski is an employee of the BCRC-IFC facility.

14. Brittany Rothermel is or was an employee of the BCRC-IFC facility.

## III. FACTS

15. Plaintiff E.D. entered the United States in or around May 2014, seeking to escape domestic violence and sexual assault.

16. Upon entry, Plaintiff was detained in an immigration facility in Texas for approximately seven (7) days.

17. After approximately a week, Plaintiff was transferred to the Berks County Residence Center-Immigration Family Center (BCRC-IFC) facility in Leesport, PA.

18. BCRC-IFC has a contract with the United States Immigration and Enforcement Agency to hold immigration detainees at the facility.

19. BCRC-IFC is a secure facility, where the immigration detainees are not permitted to leave without authorization, and any visitors (including attorneys) are subject to a search and not permitted to bring cell phones and other items to the visit, similar to rules imposed for visits at prisons and jails.

20. The facility housed approximately ninety (90) women and children.

21. The staff area was in the center of the facility with ten (10) sleeping rooms on each side of the staff area.

22. There were surveillance cameras in the common areas and the recreation yard, but not in the sleeping areas.

23. Security personnel made rounds every 10-15 minutes at night, and there were three (3) counts per day, at 7:30 a.m., 3:00 p.m., and 8:00 p.m.

24. Plaintiff was placed in a room with six (6) persons, three (3) of whom were children.

25. Shortly after Plaintiff's arrival, she met a security person, Defendant Daniel Sharkey.

26. Approximately a month after Plaintiff met Defendant Sharkey, he attempted to befriend Plaintiff and gave her and her son treats, such as chocolate and extra portions of food.

27. Defendant Sharkey continued the process of "grooming" by bestowing favors upon Plaintiff, including use of his cell phone, which she used to call her mother and to take pictures, use of the internet, and giving toys and clothes from outside the facility to her and her son.

28. Defendant Sharkey also made promises to Plaintiff about helping her with her immigration issues, even promising to help her get released from the immigration detention center.

29. Defendant Sharkey then began touching Plaintiff, first on the hand, and then he kissed her in the laundry room which had no surveillance camera.

30. Sharkey then began touching her breasts and buttocks while they were alone in her or others' sleeping quarters.

31. Plaintiff was upset with the attention but feared retaliation if she protested.

32. Plaintiff refused to touch Defendant Sharkey, which angered him and he insulted her.

33. On a Sunday afternoon at around 3:00 pm in approximately July, Sharkey followed her into the ladies bathroom and forced her to engage in sexual intercourse with him.

34. Shortly thereafter, he met her in the recreational area and demanded that she follow him into the same bathroom and again forced her to have sexual intercourse.

35. While they were engaging in intercourse, a small girl, approximately 7 years old, entered the bathroom, turned around, ran away, and told her mother about what she witnessed.

36. About a week later in August, Plaintiff was in the sleeping quarters of a friend named Patricia, who was not present and Sharkey again forced her to have sex with him.

37. Patricia returned while they were having sex, and Sharkey told Plaintiff to tell Patricia they were in the bathroom and she should leave, which she did.

38. A few days later, Sharkey approached her while she was in the outdoor recreation area and tried to pull her pants down but she refused to submit because there were children present.

39. After the sexual abuse started, Sharkey told E.D. that if she told anyone of the nature of their relationship that she would be deported back to Honduras.

40. Other residents and facility staff, including Defendants John Behm, Jamie Himmelberger, Erika Taylor, Matthew Malinowski, and Brittany Rothermel, noticed the attention Plaintiff was receiving.

41. BCRC-IFC is a relatively small facility, so that federal employees such as Defendant Petrey and the Berks County employees have frequent contact and interaction.

42. The residents must walk down the same hallway(s) as the ICE and Berks County staff, allowing for ample opportunities for both the ICE and Berks County staff to observe the immigration detainees.

43. John Behm, Jamie Himmelberger, Erika Taylor, Matthew Malinowski, and Brittany Rothermel all were Berks County employees who were on-site regularly, who had

supervisory responsibilities over Plaintiff E.D., and had and were required to have regular interactions with her at the facility.

44. Defendants Himmelberger, Rothermel, Taylor, and Malinowski often worked the same shift as Defendant Sharkey, and Defendant Behm also worked a similar or overlapping shift as Defendant Sharkey.

45. Defendant Petrey is or was a federal employee working for the Immigration and Customs Enforcement of the U.S. Department of Homeland Security.

46. He was stationed at BCRC-IFC, had his only (or primary) office of business there, and worked at the facility every day.

47. Defendant Petrey was a Deportation Officer located at BCRC-IFC, he wore a badge and a shirt or uniform that indicated he was with ICE, and was known as the "law" by the immigration detainees.

48. Defendant Petrey was the only, or one of only a few, federal or ICE employees who worked on the premises of BCRC-IFC.

49. Defendant Petrey conducted all intake interviews of the immigration detainees when they were admitted to BCRC-IFC, he conducted custody reviews, and interviewed the detainees upon their departure.

50. Any requests for a release by an immigration detainee went through Defendant Petrey, and Defendant Petrey made many or all the arrangements for an immigration detainee's release.

51. As an ICE employee, Defendant Petrey has a duty to, upon a reasonable suspicion that a detainee is at substantial risk of imminent sexual abuse, immediately act to protect the detainee. See 6 CFR 115.62.

52. Defendant Petrey had frequent interaction with the immigration detainees, beyond the interactions listed above, and came out from his office every day to the space(s) where the residents lived and were permitted to be.

53. Defendant Petrey and Defendant Sharkey had overlapping work shifts and were friends.

54. Defendant Sharkey also had informed Plaintiff E.D. that he and Defendant Petrey were friends.

55. When Plaintiff first entered the facility, she did not receive any information during orientation about sexual abuse, sexual assault, or how to report sexual abuse, sexual assault or other improper behavior by staff members, nor did she receive this information at any other time.

56. By August 2014, several staff members including Defendant employees John Behm, Jamie Himmelberger, Brittany Rothermel, Erika Taylor, Matthew Malinowski, and Jeremiah (or Josh) Petrey were aware of Plaintiff E.D. and Defendant Sharkey's intimate relationship, but failed to take any steps to protect Plaintiff.

57. At this point, the intimate relationship between Defendant Sharkey and Plaintiff was obvious to many residents at the facility who had observed them together.

58. Several residents who witnessed their intimacy complained to the staff about the relationship.

59. Diane Edwards was eventually notified of the reports.

60. The staff launched an investigation prompted by the residents' complaints.

61. Plaintiff was interviewed but denied the sexual assault at that time as she was scared and feared deportation.

62. Plaintiff was not informed, either by BCRC-IFC staff or any ICE or DHS officers, that she did not break any state or federal laws, that she would be considered a victim under state and federal laws, that Sharkey would be the abuser, or that the incidents would not affect her immigration status.

63. Defendant Sharkey left his employment or was terminated after the last incident.

64. Plaintiff continued to conceal the relationship until she broke down and revealed the relationship to her immigration attorney and/or her immigration attorney's assistant on a Sunday in the fall.

65. Her immigration attorney, Matthew Archambeault, and his assistant, Teresa Sicard-Archambeault, called and emailed various ICE employees and offices, including the Field Office for which Thomas Decker is the Director, and informed them of the incidents.

66. ICE officials then took E.D. to the Berks County District Attorney's office where she was interviewed by a detective and an ICE special agent, at which time she told the truth about the incidents.

67. ICE policies and standards, along with federal law, prohibit sexual abuse and sexual assault of immigration detainees by staff and define any sexual contact between staff and detainees, whether consensual or not, as sexual abuse.

68. The Department of Homeland Security (DHS) introduced Prison Rape Elimination Act (PREA) standards in March 2014 that would go into effect for immigration detention facilities in May 2014.

69. ICE standards require that the Field Office Director be notified anytime an employee, contractor, or volunteer is alleged to be a perpetrator of resident sexual abuse or assault.

70. After the incidents, Thomas Decker failed to ensure that E.D. was placed in a supportive environment with the least restrictive housing option available, as required by DHS regulations, 6 CFR 115.68(a).

71. After E.D. reported the incidents through her attorney, Defendants began denying Plaintiff and her son privileges, such as denying a request for a haircut for Plaintiff's son, even though other children were permitted haircuts.

72. In or around November 2014, BCRC-IFC and staff, under the direction of Diane Edwards, took many of the women's and girls' clothing, placed them in garbage bags, and gave the residents other clothing that they claimed were more appropriate.

73. In or around November 2014, BCRC-IFC and Diane Edwards began prohibiting women residents from wearing any tight clothing, clothing that revealed any cleavage, or skirts and dresses, and the other BCRC-IFC residents blamed Plaintiff for this policy and isolated her.

74. As Field Office Director, Thomas Decker makes the final decision on all immigration detainee parole requests, pursuant to Section 7.3(4) of ICE Directive 11002.1: Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture.

75. In late October 2014, E.D. made a formal request to the ICE Field Office for immediate parole in large part due to the above-related incidents, but Thomas Decker denied parole.

76. In December 2014, E.D. made another formal request to the ICE Field Office for immediate parole, but Thomas Decker denied parole.

77. Plaintiff was eventually released from the facility in December on an Order of Supervision, and moved to Georgia.

78. Defendant Sharkey was later arrested and convicted of Institutional Sexual Assault against Plaintiff.

79. The ICE/DRO Residential Standards require residential facilities holding immigration detainees to affirmatively act to prevent sexual abuse and sexual assault of the residents, including the provision of staff training, and prompt and effective intervention.

80. Diane Edwards, BCRC-IFC, and County of Berks failed to ensure that these standards were properly met at BCRC-IFC.

81. Diane Edwards, BCRC-IFC, County of Berks, and all Defendants failed to properly implement these policies.

82. Diane Edwards, BCRC-IFC, County of Berks, and all Defendants failed to establish and/or implement policies, procedures and practices that would protect immigration detainees from sexual abuse and sexual assault, including but not limited to:

   a. the failure to establish an effective reporting system and investigative procedure relating to sexual abuse and sexual assault;

   b. the failure to provide information on how to report sexual abuse and sexual assault and to notify residents that any reports would not jeopardize their immigration status, including but not limited to the failure to post or make available the proper notices on bulletin boards and information brochures;

   c. the failure to inform residents of policies or give them any information regarding sexual abuse and sexual harassment; and

   d. the failure to train and supervise staff and to instruct them that they are not permitted to have sexual "relations" with the detainees.

83. The County of Berks and BCRC-IFC, at times, may have operated BCRC-IFC without the proper licensure for a residential facility housing women and children, contrary to Pennsylvania law, an issue that is currently in separate litigation.

84. Plaintiff has experienced pain, suffering, and depression due to the incidents.

85. Defendants were acting under color of state law at all relevant times.

IV. **CAUSES OF ACTION**

**COUNT I**

**Federal Constitutional Violation:  Fourteenth Amendment**

86. Plaintiff incorporates by reference paragraphs 1-85, as if fully set forth in this paragraph.

87. The sexual abuse and sexual assaults by Defendant Sharkey against Plaintiff against her will violates the Fourteenth Amendment of the United States Constitution.

**COUNT II**

**Federal Constitutional Violation:  Fourteenth Amendment**

88. Plaintiff incorporates by reference paragraphs 1-85, as if fully set forth in this paragraph.

89. The acts and omissions of all Defendants failed to protect Plaintiff from sexual abuse and sexual assault, and caused Plaintiff's rights under the Fourteenth Amendment of the United States Constitution to be violated.

## COUNT III

### Federal Constitutional Violation: Fourteenth Amendment

90. Plaintiff incorporates by reference paragraphs 1-85, as if fully set forth in this paragraph.

91. The failure of Berks County, BCRC-IFC, and Diane Edwards to establish and/or to implement policies and procedures that would prevent and deter sexual abuse and sexual assault at the BCRC-IFC, including but not limited to the failure to supervise and train staff, to establish a proper reporting and investigative system for sexual abuse and sexual assault, to properly notify and inform the residents about their right to be free of sexual abuse and sexual assault and right to report it, constitutes a violation of the Fourteenth Amendment.

## COUNT IV

### Federal Constitutional Violation: Retaliation

92. Plaintiff incorporates by reference paragraphs 1-85, as if fully set forth in this paragraph.

93. Plaintiff's report of her assault constituted an exercising of her constitutional right under the Due Process Clause and First Amendment of the United States Constitution.

94. Subsequently Plaintiff suffered from adverse effects by Defendants Berks County, BCRC-IFC, Diane Edwards, John Behm, Jamie Himmelberger, Erika Taylor, Matthew Malinowski, and Brittany Rothermel, including but not limited to the denial of privileges granted to other residents, the implementation and enforcement of policies that caused Plaintiff to be shunned by other residents, and the denial of a parole request, that were causally linked to the reporting of the institutional sexual assault, constituting a violation of Plaintiff's right to be free of retaliation.

## COUNT V

### State Law Violation: Battery

95. Plaintiff incorporates by reference paragraphs 1-85, as if fully set forth in this paragraph.

96. Defendant Sharkey's intentionally touching of Plaintiff in a sexual manner, where Plaintiff did not consent to the sexual touching, and the sexual touching was harmful and offensive, constitutes battery under Pennsylvania law.

## COUNT VI

### State Law Violation: Intentional Infliction of Emotional Distress

97. Plaintiff incorporates by reference paragraphs 1-85, as if fully set forth in this paragraph.

98. Defendant Sharkey's acts and conduct were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society, as to cause intentional infliction of emotional distress.

### V. RELIEF REQUESTED

1. Compensatory damages against all Defendants;
2. Punitive damages against all Defendants;
3. Declarative relief against all Defendants;
4. Attorney fees for Plaintiff's counsel; and
5. Any other relief the Court deems necessary.

        Respectfully submitted,

        /s/ Su Ming Yeh
        Su Ming Yeh
        Attorney # PA 95111
        Pennsylvania Institutional Law Project
        718 Arch Street, Suite 304S
        Philadelphia, PA 19106
        T:  215-925-2966

        /s/ Angus R. Love
        Angus R. Love
        Attorney # PA 22392
        Pennsylvania Institutional Law Project
        718 Arch Street, Suite 304S
        Philadelphia, PA 19106
        T:  215-925-2966

DATE:  May 30, 2017